ADOLPHE C. PETERSON v. SHERMAN CHILD AND OTHERS.[1]

February 24, 1933.

No. 29,281.

*Keyes, Pardee & Solether,* for appellant.
*Child & Child,* for respondents.

LORING, JUSTICE.

In form this was an action to determine adverse claims to vacant and unoccupied lots lying west of Cedar Lake in Hennepin county. Defendants set up a first mortgage lien upon the lots. The court found that defendants had a valid first mortgage and that the amount due thereon as of May 7, 1931, was $4,386.39. Plaintiff moved for amended findings or for a new trial. Both motions were denied, and the plaintiff has appealed from the order denying the motion for a new trial.

In 1923 the lots of which the plaintiff claims to be the owner were 23 of block 11 and 20 and 21 of block 4 in McNair park and

[1]Reported in 247 N. W. 1.

were, with other lots, part of a development project to which one Francis M. Henry had the fee title subject to a mortgage to the Investors Syndicate on the lots in block 11 and to a second mortgage to one Zimmerman. Both these mortgages were later paid and satisfied. There was also a small mortgage to S. R. Child. October 13, 1923, Henry authorized Dickinson & Gillespie, who were in the real estate business, to sell all the property in block 11 except the homestead (not here material) at a certain schedule of prices. The lots in block 4 were later included. Dickinson & Gillespie were to have 30 per cent commission. November 7, 1923, Henry executed and delivered a note and mortgage to S. R. Child in the sum of $4,995.98, his then existing indebtedness to Child, plus $700, which was to be later advanced by Child to Henry. This mortgage was recorded in December of that year and covered all lots in blocks 4 and 11 to which Henry had title. Dickinson & Gillespie endeavored to arrange with Child for releases to be made from the lien of his mortgage upon lots as they were sold. The court has found that there was no definite arrangement by which these releases were to be had, but Child did as a matter of fact from time to time, by special bargain in each instance, release a few of the lots that were sold. In January, 1924, Dickinson & Gillespie, in the name of Henry, executed an option to the plaintiff on the lots described in the complaint. In July, 1924, Henry ordered Dickinson & Gillespie to pay receipts from outstanding contracts to Child. He stated to them that Child would procure releases from the mortgage liens as necessary. In May, 1925, the Investors Syndicate insisted upon the payment of its mortgage, and a new one upon the homestead lots was negotiated with the Produce State Bank. S. R. Child subordinated the lien of his mortgage to that of the bank. Upon the insistence of the bank, Henry made an assignment of the receipts from the then outstanding option contracts to Child for the benefit of the bank. Thereafter Henry directed Child to deduct certain amounts from the receipts from Dickinson & Gillespie and to apply them under his direction to purposes other than the satisfaction of either the bank mortgage or that of Child.

Enough, however, was collected to satisfy the bank mortgage, leaving the Child mortgage first.

It appears that the plaintiff has paid up his contract and is entitled to a deed from Henry conveying clear title. Had the Childs applied all receipts from Dickinson & Gillespie upon their mortgage there would have been sufficient to satisfy it, but following the directions received from Henry a great part of these receipts was diverted to other purposes. Dickinson & Gillespie took their 30 per cent commission and some other claimed expenses from the receipts before transmitting them to the Childs.

Large judgments have been entered against Henry, and it is the claim of the plaintiff, first, that there was a definite agreement on the part of S. R. Child to release these lots as it became necessary to give the purchasers clear title; and, second, that the Childs are estopped from setting up the lien of their mortgage as against these lots by the receipt of the net proceeds of lot sales under the agreement which Henry made with Dickinson & Gillespie in regard to the sale of the lots and of which agreement it is claimed the Childs had knowledge before their mortgage was recorded. The court has found against the plaintiff on both of these issues.

The appellant relies upon certain correspondence between S. R. Child and Sherman Child on the one hand and Dickinson & Gillespie upon the other to establish the agreement by S. R. Child that he would release the lien of his mortgage as it became necessary to make clear title to the lot purchasers. In July, 1924, S. R. Child and Sherman Child transmitted to Dickinson & Gillespie a letter signed by Henry addressed to Dickinson & Gillespie which read as follows:

"Until further notice, pay to S. R. Child and Sherman Child the money which shall come into your hands after August 1, 1924, from the sale of lots in blocks 11 and 4, McNair Park, under contract at this time.

"They will procure releases as you need them from the Investors' Syndicate and S. R. Child.

"Will you also send the statements in duplicate, one to S. R. Child and one to myself and oblige?"

In our opinion this falls far short of any definite contract on the part of Child to release his mortgage as claimed by the appellant. In the Henry letter it is not stated upon what terms such releases shall be procured or delivered, and there is no promise to depart from the previous practice of negotiating each partial release separately as purchasers completed payment. We think the trial court was correct in holding against the plaintiff on this issue. It was apparently well known upon what terms releases from prior mortgages could be obtained, and each release from the Child mortgage had been separately negotiated for.

■ When it comes to the claim of estoppel we think the trial court's position is equally well grounded. The Child mortgage was recorded in December, 1923, prior to the execution of the option to the plaintiff. It was constructive notice to the plaintiff of Child's rights in the matter. The plaintiff evidently went into the purchase relying upon Henry's ability and that of his agents to pay the mortgage or arrange for a release of the lots therefrom. It was some years later before judgments were entered against Henry indicating that he might possibly be in financial difficulties. There is no evidence in the record that plaintiff has ever demanded from Henry a release of the mortgage or that he give a clear title or that Henry is unable to satisfy the Child mortgage or will not do so upon demand.

The order appealed from is affirmed.